**Denise RUBEL and Ivan Rubel, Plaintiffs,**

v.

**ELI LILLY AND COMPANY, Defendant.**

No. 86 Civ. 3834 (JMC).

United States District Court, S.D. New York.

Oct. 9, 1987.

Paul H. Blaustein, Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, for plaintiffs.

Sanford N. Berland, Law Offices of Russel H. Beatie, Jr., New York City, for defendant.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Plaintiffs' motion for partial summary judgment is granted. Fed.R.Civ.P. 56(a), (d).

## BACKGROUND

Plaintiffs Denise Rubel and Ivan Rubel, a married couple, are residents of New York. Denise Rubel was born to Julia and George Horowitz on January 23, 1953. Defendant, Eli Lilly and Company ["Lilly"], is a corporation organized and existing under the laws of Indiana, and does not have a principal place of business in New York. Lilly is a major American pharmaceutical manufacturer which manufactured and supplied Diethylstilbestrol ["DES"].

Allegedly, Julia Horowitz, while pregnant with Denise in 1952, daily ingested one 25 mg. pill of DES purportedly manufactured by Lilly. Plaintiffs claim that the DES ingested by Julia Horowitz injured Denise Rubel in utero, ultimately causing gross tissue and organ abnormality of the cervix and vagina, infertility and consequential physical and emotional distress. Plaintiff does not claim to suffer from cancer or a cancerous condition, nor does she claim that her ailments will become cancerous.

DES is a synthetic estrogen drug that was routinely prescribed between 1947 and 1971 to prevent accidents, such as miscarriages, in pregnancies. Although DES was approved for use in the United States as early as 1941, it was not until 1947 that the Food and Drug Administration (FDA) approved DES for use by pregnant women. In 1971, it was first reported that ingestion of DES by pregnant women could cause vaginal cancer and other abnormalities in the reproductive tracts of their daughters. FDA approval of the drug for treating problem pregnancies was withdrawn. It is estimated that several million women were treated with DES between 1947 and 1971.

Plaintiffs move for partial summary judgment on its claim that Lilly was negligent in marketing DES without adequate testing.[1] Their motion is based on the doc-

---

1. Plaintiffs also have pending, under Fed.R.  Civ.P. 37(a), a motion to compel defendant to

trine of collateral estoppel. Defendant opposes the motion.

## DISCUSSION

### A. *Choice of Law*

■ As federal jurisdiction over this action is based on the diversity of citizenship between the parties, the Court must apply New York's choice of law rules to determine which state's substantive law will be applied to the dispute. *See Klaxon v. Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In recent years, the New York courts have held that "the law of the jurisdiction having the greatest interest in the litigation will be applied." *Miller v. Miller*, 22 N.Y.2d 12, 15–16, 290 N.Y.S.2d 734, 737, 237 N.E.2d 877, 879 (1968); *see Schering Corp. v. Home Ins. Co.*, 544 F.Supp. 613, 618 (E.D.N.Y.1982), *rev'd on other grounds*, 712 F.2d 4 (2d Cir.1983).

In the instant case, plaintiffs are New York residents, New York is the place of the alleged injuries and the place where the allegedly tortious conduct occurred. In addition, plaintiffs argue that New York law predominates and defendant does not dispute that contention. For all of the foregoing reasons, the law of New York shall control the disposition of this motion.

### B. *Collateral Estoppel*

Under the doctrine of collateral estoppel, or issue preclusion, a party may preclude an adversary from relitigating an issue, whether of fact or of law, which has previously been decided against that adversary in a proceeding in which he had a fair opportunity to fully litigate that issue. *See Gilberg v. Barbieri*, 53 N.Y.2d 285, 441 N.Y.S.2d 49, 423 N.E.2d 807 (1981); *Schwartz v. Public Administrator of County of Bronx*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969).

Collateral estoppel is a doctrine founded on the notion that "it is not fair to permit a party to relitigate an issue that has already been decided against it." *Kaufman*, 65 N.Y.2d at 455, 492 N.Y.S.2d at 588, 482 N.E.2d at 68. When properly utilized, it serves to protect the public's interest in minimizing litigation. *Id.* It is left to the discretion of the trial court to determine whether the use of collateral estoppel is appropriate in a particular case. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

It is well settled under New York law that before collateral estoppel may be invoked to prevent a party from relitigating an issue, the party seeking to invoke the doctrine must prove that there exists an identity of issue between the issue which has been decided in the prior action and the issue which is decisive of the present action. If this burden is met, collateral estoppel may still be denied if the party contesting its use can prove that he did not have a full and fair opportunity to litigate the decision now said to be controlling. *Gilberg*, 53 N.Y.2d at 291, 441 N.Y.S.2d at 50, 423 N.E.2d at 808; *Schwartz*, 24 N.Y.2d at 71, 298 N.Y.S.2d at 960, 246 N.E.2d at 729; *see Koch v. Consol. Edison Co.*, 62 N.Y.2d 548, 554–55, 479 N.Y.S.2d 163, 165–66, 468 N.E.2d 1, 3–4, *cert. denied*, 469 U.S. 1210, 105 S.Ct. 1177, 84 L.Ed.2d 326 (1985); *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 500–01, 478 N.Y.S.2d 823, 826–27, 467 N.E.2d 487, 490–91 (1984).

Lilly was found to have been negligent in that it failed to adequately test DES for detrimental side effects before it distributed the drug for use by pregnant women. *See Bichler v. Eli Lilly & Co.*, 55 N.Y.2d 571, 450 N.Y.S.2d 776, 436 N.E.2d 182 (1982). The Court of Appeals has given that holding collateral estoppel effect. *Kaufman v. Eli Lilly and Company*, 65 N.Y.2d 449, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985). Lilly does not contest that the findings in *Bichler* concerning adequate testing were fully and fairly litigated, or that those determinations were essential to the judgment in that case. Rather, Lilly's

answer plaintiff's first set of interrogatories, produce documents and make admissions. Defendant opposes this motion. Both parties have requested an extension of time for completion of discovery. These matters have been referred to Magistrate Nina Gershon for disposition, consistent with this Memorandum and Order.

challenge to the use of collateral estoppel in this case rests on two grounds. First, Lilly argues that the plaintiffs have failed to meet their burden of proof as to identity of issue because Denise Rubel's alleged injuries are not a medical parallel of those suffered by the plaintiffs in *Bichler* and *Kaufman*. Second, Lilly argues that the use of collateral estoppel is inappropriate because of the existence of other state decisions regarding Lilly's negligence which are purportedly inconsistent with *Bichler*.

### 1. Inconsistent Verdicts

■ The Court turns first to Lilly's contention that none of the *Bichler* jury's findings should be given preclusive effect because of the existence of verdicts favorable to Lilly in other DES cases. Lilly asserts that, because it has won favorable verdicts in cases where the injuries alleged were similar to Denise Rubel's injuries, those verdicts are inconsistent with *Bichler*. First, it should be noted that this argument was raised and rejected in *Kaufman*, 65 N.Y.2d at 458–59, 492 N.Y.S.2d at 590, 482 N.E.2d at 69. It is only "adjudications *on the same issue* inconsistent with the one to be given preclusive effect" that are a factor to be used in determining whether collateral estoppel should be applied. *Id.* (emphasis added). The Court of Appeals, when faced with the same cases defendant relies on here, found no inconsistency with *Bichler* as two different legal theories were involved. *Id.* The *Bichler* jury found that Lilly had negligently marketed DES without adequate testing beforehand.

The legal theory at issue in the cases relied on by Lilly was whether it had been negligent in failing to warn of the risks associated with DES. Defendant has made no showing that the type of injury alleged in those cases was a factor in obtaining those favorable verdicts. Thus, contrary to defendant's claims, those cases provide no basis to warrant allowing Lilly to relitigate the question of whether it failed to adequately test DES.

### 2. Identity of Issues

■ Lilly next argues that, because Denise Rubel does not allege the same cancerous condition that was involved in *Bichler* and *Kaufman*, identity of issues between the instant case and those cases is lacking. In *Bichler*, the plaintiff was a young woman who developed cervical and vaginal cancer at the age of 17. She brought suit against Lilly and other pharmaceutical companies alleging that her mother's ingestion of DES, while pregnant with her, caused her injuries. Her theory was that DES had been marketed without adequate testing as to its safety. In addition to a general verdict for plaintiff, the jury answered seven special interrogatories in her favor as a basis of imposing liability on Lilly.[2]

In *Kaufman*, the plaintiff was another young woman who developed cervical cancer at the age of 18. She brought suit against Lilly based on the same theories as *Bichler*. At Special Term, plaintiff was granted partial summary judgment, thus estopping Lilly from relitigating the issues

---

**2.** The interrogatories and the jury's answers to them were as follows:

(1) Was DES reasonably safe in the treatment of accidents of pregnancies when it was ingested by plaintiff's mother in 1953? (NO)
(2) Was DES a proximate cause of plaintiff's cancer? (YES)
(3) In 1953 when plaintiff's mother ingested DES, should the defendant, as a reasonably prudent drug manufacturer, have foreseen that DES might cause cancer in the offspring of pregnant women who took it? (YES)
(4) Foreseeing that DES might cause cancer in the offspring of pregnant women who took it, would a reasonably prudent drug manufacturer test it on pregnant mice before marketing it? (YES)

(5) If DES had been tested on pregnant mice, would the tests have shown that DES causes cancer in their offspring? (YES)
(6) Would a reasonably prudent drug manufacturer have marketed DES for use in treating accidents of pregnancy at the time it was ingested by the plaintiff's mother if it had known that DES causes cancer in the offspring of pregnant mice? (NO)
(7) Did defendant and the other drug manufacturers act in concert with each other in the testing and marketing of DES for use in treating accidents of pregnancy? (YES)
*Bichler v. Eli Lilly & Co.*, 55 N.Y.2d 571, 587 n. 10, 450 N.Y.S.2d 776, 783–84 n. 10, 436 N.E.2d 182, 189–90 n. 10 (1982).

decided by the *Bichler* jury. *Kaufman v. Eli Lilly & Co.*, 116 Misc.2d 351, 455 N.Y. S.2d 329 (Sup.Ct.N.Y.Co.1982). With the exception of one of the jury's findings, not relevant to this discussion, summary judgment was upheld on appeal. *See Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985). The other findings of the *Bichler* jury—that Lilly and other DES manufacturers negligently marketed the drug for use in preventing miscarriages without first performing laboratory tests—were given collateral estoppel effect. *Id.* Lilly has since been collaterally estopped from relitigating the issue of negligent testing. *See Schaeffer v. Eli Lilly & Co.*, 113 A.D.2d 827, 493 N.Y.S.2d 501 (2d Dep't 1985); *Helmrich v. Lilly*, No. 86 Civ. 14386, slip. op. (Sup.Ct. Onondaga Co. July 18, 1987).

Defendant contends that because these cases, and indeed the *Bichler* jury findings themselves, specifically involved cancer, *Kaufman* only extends *Bichler*'s findings to cases involving the same cancerous injury. It is defendant's position that as plaintiff does not allege a cancerous condition, *Kaufman* does not apply, and defendant should not be estopped from relitigating the issue of whether it was negligent in failing to adequately test DES before marketing it.

The cases defendant relies on to support this line of reasoning are not controlling as they were all decided on procedural grounds. The disparity in injuries between the cases relied on by defendant, and *Bichler*, was not a determinative issue in the disposition of those summary judgment motions. *See, e.g., Wetherill v. Univ. of Chicago*, 548 F.Supp. 66 (N.D.Ill.1982); *Dawson v. Eli Lilly & Co.*, 543 F.Supp. 1330 (D.D.C.1982); *Hadden v. Eli Lilly & Co.*, No. L–5484–76 (N.J.Sup.Ct. Sept. 22, 1986) (bench ruling of Van Sciver, J.); *Price v. Univ. of Chicago*, No. 77 Civ. 3112, slip. op. (N.D.Ill. Feb. 16, 1983). More importantly, only two of the cases cited by defendant were decided by New York courts. In *Sardell v. Eli Lilly & Co.*, the plaintiff's summary judgment motion was denied as the court found plaintiff's motion papers "contained no pleadings and the court [would

not] speculate whether the claims in this action are identical to and rest upon the findings in *Bichler*." *Sardell v. Eli Lilly & Co.*, No. 182868/77, slip. op. at 2 (Sup.Ct. Kings Co. Oct. 15, 1982). The subsequent favorable verdict won by Lilly in that case was based not on whether it had adequately tested DES, but rather, on the jury's finding that Lilly had adequately warned the medical community of the risks involved in the use of DES. In *Rizzo v. Eli Lilly & Co.*, the court did not set forth its reasoning for granting Lilly summary judgment. *Rizzo v. Eli Lilly & Co.*, No. 6043/83, slip. op. (Sup.Ct.Monroe Co. Nov. 16, 1984). It is, however, of no slight significance that both *Sardell* and *Rizzo* were decided before *Bichler* was given collateral estoppel effect in *Kaufman* and again in *Schaeffer*.

This Court is bound by New York law as set forth in *Kaufman*. While it is true that the *Bichler* jury's findings specifically dealt with cancer, and the subsequent cases all involved a cancerous injury, the Court is not persuaded that *Kaufman* does not apply in this case. In *Bichler*, there was testimony that the state of scientific knowledge in the early 1950s was such that it was well known that substances ingested by a pregnant woman would pass through the placenta to the fetus. There was further testimony that it was well known that tests on mice were available which would have demonstrated within six months the danger of cancer developing in a fetus exposed to DES. The jury accepted this testimony and concluded that a reasonably prudent drug manufacturer would not have marketed DES for use in preventing miscarriages.

Lilly, however, asks this Court to find that, because Denise Rubel suffers a less serious injury than cancer, Lilly should be allowed to relitigate the question of adequate testing. The Court finds this argument devoid of merit. Denise Rubel, like the plaintiff in *Bichler*, claims to have suffered an injury to her reproductive tract as a consequence of prenatal exposure to DES. Denise Rubel, like the plaintiff in *Bichler*, claims that she would not have

been so exposed had defendant Lilly adequately tested DES. The jury in *Bichler* found that Lilly had been negligent in failing to test DES, as such tests would have revealed the drug's carcinogenic effects on the prenatally exposed offspring of DES users. Lilly's negligence in failing to test for possible carcinogenic side effects, the most serious threat to a woman's reproductive tract, must logically include a failure to test for less serious threats to a woman's reproductive tract. In fact, it was undisputed in *Bichler* that no testing of any type was performed to determine DES's possible detrimental effects on a developing fetus. Lilly can not now claim a lack of negligence in its testing of DES solely on the grounds that the injury involved is less severe. The Court finds therefore that there is sufficient identity of issue to preclude Lilly from relitigating the question of adequate testing.

■ Nor, as defendant asserts, would using collateral estoppel on the issue of adequate testing deprive defendant of its right to a jury trial on the issue of proximate cause. In order to invoke the use of collateral estoppel, it is only required that "the issue given preclusive effect be dispositive of the particular issue sought to be precluded, not of ultimate liability with regard to all issues in the case." *Perez v. N.Y.C. Housing Authority,* 114 Misc.2d 1055, 452 N.Y.S.2d 510, 513 (N.Y.C.Civ.Ct. 1982) (quoting *Shanley v. Callanan Indus. Inc.,* 54 N.Y.2d 52, 444 N.Y.S.2d 585, 429 N.E.2d 104 (1984)). Lilly was found negligent in that it failed to adequately test DES before marketing it. In *Kaufman,* that finding was given collateral estoppel effect. The Court of Appeals noted that "the only issues Lilly [may] be precluded from relitigating ... relate solely to the facts underlying its negligence in testing." *Kaufman,* 65 N.Y.2d at 457, 492 N.Y.S.2d at 589, 482 N.E.2d at 68. "Proximate cause ... was not and could not have been decided by the *Bichler* jury." *Schaeffer,* 113 A.D.2d at 829, 493 N.Y.S.2d at 503. The only issue that plaintiffs seek to have Lilly estopped from relitigating is whether Lilly was negligent in its testing of DES and they have specifically deleted the issue

of proximate cause from their motion. Defendant will still be allowed to litigate Denise Rubel's claim that her injuries were caused by her mother's ingestion of DES.

A recent long line of cases concerning Consolidated Edison's ["Con. Ed."] liability in the 1977 blackout supports the view that the use of issue preclusion is appropriate, notwithstanding the existence of different injuries. *In Food Pageant, Inc. v. Consol. Edison Co., Inc.,* 54 N.Y.2d 167, 445 N.Y. S.2d 60, 429 N.E.2d 738 (1981), the New York Court of Appeals affirmed a jury's finding that Con. Ed. had been grossly negligent in causing the blackout. Damages were awarded to the plaintiff grocery store for food spoilage and loss of business. *Id.* The finding of gross negligence was later given collateral estoppel effect in an action brought against Con. Ed. by New York City for damages due to looting, rioting, overtime pay and lost revenues, as a result of the blackout. *Koch v. Consol. Edison Co.,* 62 N.Y.2d 548, 479 N.Y.S.2d 163, 468 N.E.2d 1 (1984). The Court of Appeals did not even address the question of the disparity of the injuries involved in each case. *Id.* Indeed the Court's ruling followed a number of lower court decisions giving *Food Pageant* collateral estoppel effect in varied personal injury actions, despite the fact that each case involved different issues of claimed injury, intervening and superseding proximate cause, mitigation of damages and privity of contract. *See, e.g., Shaid v. Consol. Edison Co. of New York, Inc.,* 95 A.D.2d 610, 467 N.Y.S. 2d 843 (2nd Dept.1983); *Goldstein v. Consol. Edison Co. of New York, Inc.,* 93 A.D.2d 589, 462 N.Y.S.2d 646 (1st Dep't 1983); *Longo v. New York City Educ. Fund,* 121 Misc.2d 830, 469 N.Y.S.2d 303 (Sup.Ct.N.Y.Co.1983).

In *Koch,* the Court of Appeals found that "Con Edison had a full and fair opportunity to litigate the issue of gross negligence, the forum and applicable procedures were the same, the burden of persuasion was the same, and Con Edison, explicitly then recognizing the potential preclusive effects of an adverse determination in that case, had every incentive to defend that action

fully and vigorously." 62 N.Y.2d at 558, 479 N.Y.S.2d at 168, 468 N.E.2d at 6. Lilly has had the same opportunity to litigate fully the issue of whether it adequately tested DES before it marketed it for use in pregnant women. *See Bichler*, 55 N.Y.2d 571, 450 N.Y.S.2d 776, 436 N.E.2d 182. Lilly has also vigorously litigated against the use of collateral estoppel. *See Kaufman*, 65 N.Y.2d 449, 492 N.Y.S.2d 584, 482 N.E.2d 63; *Schaeffer*, 113 A.D.2d 827, 493 N.Y.S.2d 501. Accordingly, Lilly cannot claim unfair prejudice if plaintiffs are allowed the use of offensive collateral estoppel in this case. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

■ Public policy also mandates the use of issue preclusion in this case. The policy foundation underlying the doctrine of collateral estoppel is the conservation of the courts' and the litigants' resources and the need for efficiency and consistency in the dispensation of justice. *See Read v. Sacco*, 49 A.D.2d 471, 375 N.Y.S.2d 371 (2d Dep't 1975). Nowhere is that need more apparent than here. Over 100,000 women in New York alone have been affected by DES and it is estimated that there will be over 1,000 individual and class action lawsuits against manufacturers of DES. *See Bichler*, 55 N.Y.2d at 577, 450 N.Y.S.2d at 778, 436 N.E.2d at 184. Under New York law, Lilly has been found to be negligent in failing to adequately test DES before marketing it and estopped to deny its negligence in subsequent cases. The Court will not allow Lilly to jump from forum to forum in the hopes of finding a verdict favorable to it on the issue of its negligence. It will, however, still be up to the jury to decide if that negligence leads to liability in this case.

## CONCLUSION

For the reasons stated, plaintiffs' motion for partial summary judgment on the issue of Lilly's negligence in failing to adequately test DES prior to marketing it for use by pregnant women is granted. Fed.R.Civ.P. 56(a), (d).

SO ORDERED.