CAROL ANDERSON et al., Appellants-Respondents, v ELI LILLY & COMPANY et al., Respondents-Appellants, and MERCK & COMPANY, INC., Respondent.

Third Department, June 28, 1990

APPEARANCES OF COUNSEL

*Leonard L. Finz (Steven DiJoseph, Barry Salzman* and *Stuart L. Finz* of counsel), for appellants-respondents.

*Brown & Wood (Russel H. Beatie, Jr., Kenneth J. King* and *Charna L. Gerstenhaber* of counsel), for Eli Lilly & Company, respondent-appellant.

*Phillips, Lytle, Hitchcock, Blaine & Huber (Alexander C. Cordes* of counsel), for E.R. Squibb & Sons, Inc., respondent-appellant.

*Patterson, Belknap, Webb & Tyler* for Abbott Laboratories, respondent-appellant.

*Sedgwick, Detert, Moran & Arnold* for Upjohn Company, Inc., respondent-appellant.

*Winthrop, Stimson, Putnam & Roberts* for Rexall Drug Company, Inc., respondent-appellant.

*DeGraff, Foy, Conway, Holt-Harris & Mealey (Carroll J. Mealey, F. Douglas Novatny, Maureen A. Keegan* and *Kirk M. Lewis* of counsel), for respondent.

### OPINION OF THE COURT

CASEY, J. P.

Plaintiff Carol Anderson (hereinafter plaintiff) alleges that her exposure to the drug diethylstilbestrol (hereinafter DES) while she was *in utero* caused certain abnormalities in her reproductive system which prevented her from giving birth to a healthy child and ultimately resulted in a radical hysterectomy, which has left her infertile. Asserting causes of action based upon, *inter alia,* negligence, breach of warranty and strict products liability, plaintiff commenced this action for damages against a number of defendants that manufactured and marketed DES when her mother ingested the drug. Plaintiff's husband asserted a derivative cause of action for loss of consortium, seeking damages for the loss of the ability to have natural children of the marriage. The order on appeal here disposed of a number of motions brought by the parties after issue was joined, resulting in various cross appeals. The issues raised by defendants' appeals were resolved by the recent Court of Appeals decision in *Hymowitz v Lilly & Co.* (73 NY2d 487, *cert denied* — US —, 110 S Ct 350), leaving only two issues for our consideration.

The first of these issues concerns the viability of the loss of consortium cause of action asserted by plaintiff's husband. Supreme Court dismissed this cause of action based upon the established rule that a spouse does not have a cause of action

for loss of consortium unless the spouse was married to the injured party at the time of the actionable conduct *(see, Du Bois v Community Hosp.,* 150 AD2d 893, 894; *Briggs v Butterfield Mem. Hosp.,* 104 AD2d 626; *Rademacher v Torbensen,* 257 App Div 91). Plaintiff's husband contends that since plaintiff's preexisting injury was undiscoverable at the time of the marriage and was caused by a toxic substance, recovery should be allowed. We reject this contention.

Consortium represents the marital partners' interest in the continuance of the marital relationship as it existed at its inception *(see, Millington v Southeastern Elevator Co.,* 22 NY2d 498, 504-505), not upon some guarantee that the marital partners are free of any preexisting latent injuries. Implicit in the husband's reliance on the undiscoverable nature of plaintiff's injury is the suggestion that the result would have been different had he known of the injury, but public policy would not be served by extending loss of consortium liability upon speculation that plaintiff's husband would not have entered into the marriage had he known of plaintiff's injuries.

Nor does the involvement of DES require a departure from the well-established principles set forth above. In *Enright v Lilly & Co.* (155 AD2d 64), we recognized a strict products liability cause of action in favor of a plaintiff whose injuries were allegedly caused by her mother's exposure to DES *in utero.* Plaintiff's complaint in *Enright* met the required elements of a strict products liability cause of action, presenting the question of whether we should refuse to permit recovery because the actionable conduct occurred prior to the plaintiff's conception. In resolving this issue, which the Court of Appeals expressly left unresolved when it refused to recognize preconception tort liability based upon negligence *(Albala v City of New York,* 54 NY2d 269, 274, n), we examined the competing policy considerations, including those reflected by New York's recent flexibility in affording a remedy to the victims of DES *(Enright v Lilly & Co., supra,* at 68-70).

■■ In the case at bar, the allegations in the complaint do not meet the elements of a loss of consortium cause of action. As noted above, the actionable conduct did not occur during the marriage, as required by case law, and in contrast to *Enright (supra)* there is nothing in that case law which suggests that a different result should obtain in this case. In addition, an examination of the complaint, as amplified by the bill of particulars, reveals that the injuries for which plaintiff's husband seeks damages do not fall within the scope of a

cause of action for loss of consortium. Consortium includes "such elements as love, companionship, affection, society, sexual relations, solace and more" *(Millington v Southeastern Elevator Co., supra,* at 502). Plaintiff's husband does not particularize a loss of any of these elements. Rather, he focuses on the loss of the ability to have natural offspring of the marriage. Although the loss of child-bearing opportunity has been mentioned in the context of consortium, it has been included as a part of the broader element of deprivation of sexual relations *(supra,* at 507). It has long been recognized that because the injury is too speculative there may be no recovery for the loss of offspring *(Hahn v Taefi,* 115 AD2d 946). We conclude, therefore, that loss of child-bearing opportunity, standing alone and unconnected to any other injury to the marital relationship, is not an element of loss of consortium. For all of the reasons set forth above, we are of the view that Supreme Court correctly dismissed the fifth and sixth causes of action. The revival provision of the toxic tort statute (L 1986, ch 682, § 4) does not require a contrary result. It is a purely procedural device, which revives an otherwise time-barred remedy. Although it reflects this State's policy favoring a remedy for DES-caused injuries, it does not create a substantive cause of action where none otherwise exists.

The second issue for our consideration concerns the collateral estoppel effect of the jury verdict in *Bichler v Lilly & Co.* (55 NY2d 571) against defendant Eli Lilly & Company herein. That verdict has been given limited collateral estoppel effect in other DES litigation *(e.g., Kaufman v Lilly & Co.,* 65 NY2d 449; *Schaeffer v Lilly & Co.,* 113 AD2d 827; *Rubel v Lilly & Co.,* 681 F Supp 151), but Lilly contends that since the *Bichler* case involved the cancer-causing effects of DES, while plaintiff's injuries herein do not include cancer, the required identity of issues is lacking. Plaintiff, on the other hand, claims that the nature of the injuries is relevant to the proximate cause issue which must be litigated, but Lilly should be precluded from relitigating certain issues, including its failure to test DES. The jury verdict in *Bichler* contained responses to a number of special interrogatories *(see, Kaufman v Lilly & Co., supra,* at 454, n 1). These interrogatories specifically related to the time frame during which the *Bichler* plaintiff's mother ingested DES, i.e., 1953. Thus, for example, the *Bichler* jury was asked whether a reasonably prudent drug manufacturer should have foreseen in 1953 that DES might cause damaging side effects (cancer) and, if so, whether

a reasonably prudent drug manufacturer would have performed certain tests before marketing the drug, and whether those tests would have shown the side effects. In the case at bar, plaintiff's mother ingested DES some three years earlier, in 1950, and we agree with Supreme Court that this time difference precludes application of collateral estoppel *(cf., Kaufman v Lilly & Co., supra,* at 455, n 2 [where the court declared that the ingestion of DES one year *later* in 1954 did not destroy the identity of issues]). Thus, the *Bichler* jury's findings as to what a reasonably prudent drug manufacturer should have foreseen in 1953 and what would have been revealed by testing in 1953 does not establish what should have been foreseen in 1950 or what would have been revealed by testing in 1950. The possibility of scientific advances during the intervening three years raises the question of whether that which was foreseeable and discoverable in 1953 could have been foreseen or discovered in 1950. Accordingly, Supreme Court properly concluded that collateral estoppel was inapplicable.

WEISS, MIKOLL, MERCURE and HARVEY, JJ., concur.

Order affirmed, without costs.